IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| VALERIO LOPEZ, *et al.*, | * |
| Plaintiffs, | * |
| v. | *   Civil Action No.: 8:08-cv-01579-DKC |
| NTI, LLC, *et al*. | * |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
TO ENFORCE ORAL SETTLEMENT AGREEMENT**

Plaintiffs[1] have filed a Motion to Enforce Oral Settlement Agreement. This Memorandum is submitted in support of Plaintiffs' Motion.

I.  **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

In this Federal Labor Standards Act (FLSA) action, Plaintiffs seek to recover unpaid wages owed to them by Defendants. Plaintiffs worked for Defendant XTEL Construction Group, LLC and its owner, Defendant Mike Bahmani, from approximately February 2006 to July 2006 digging ditches and installing fiber optic cable in Anne Arundel County, Maryland. In their Complaint dated June 17, 2008, Plaintiffs state that Defendants, among others, failed to pay them as promised and violated federal and state laws regarding minimum wage and overtime payments. Plaintiffs state that Defendants owe them

---

[1] For clarity, this Motion refers to Plaintiffs and Claimants in this action collectively as "Plaintiffs." Valerio Lopez, Carlos Garcia Valle, and Oscar Pineda, with others no longer a party to this lawsuit, filed their Complaint against Defendants XTEL Construction Group, LLC and Mike Bahmani, and others no longer a party to this lawsuit, on June 17, 2008. Claimants Virgillio Dominguez Gomez, Juan Pineda Gonzales, Marvin Mejia, Jose Santos Melgar, Jesus Orellana, Victor Perez, Josue Roberto Pineda, Nery Armando Pineda, Guadalupe Diaz Ortiz, and Rafael Amaya joined as claimants pursuant to 29 U.S.C. § 216(b).

$80,000. Trial was scheduled before the Honorable Chief Magistrate Judge Paul W. Grimm for March 7, 2011.

### A. THE SETTLEMENT AGREEMENT[2]

After several attempts to resolve this case out of court, counsel for the Parties agreed to jointly seek the assistance of the Honorable Chief Magistrate Judge Paul W. Grimm to reach a settlement. (*See* Affidavit of Professor Michele Gilman ¶2, attached as Exhibit 1.) In his letter to the Court dated February 11, 2011, counsel for Defendants, Bruce Luchansky, requested Judge Grimm's "assistance in settlement negotiations" and informed this Court that his "client grants permission for Your Honor to participate in this regard." *See Docket Entry No. 106*.

Counsel for both of the Parties had a telephone conference with Judge Grimm on February 7, 2011, to discuss a settlement. (Gilman Aff. ¶3) While the parties had already agreed to a structured settlement of $8,500, they remained divided regarding the costs of administering the settlement. (Gilman Aff. ¶3) With Judge Grimm's assistance, the Parties agreed on the settlement terms listed below. (Gilman Aff. ¶3) Judge Grimm concluded the conversation by summarizing the following terms:

> 1. Defendants will pay Plaintiffs $10,000. Defendants will pay an initial installment of $1,500 for the costs of administering settlement funds to Plaintiffs who live abroad, and thereafter pay $500 a month to Plaintiffs until the settlement is paid in full;
>
> 2. Upon agreeing to the settlement, Defendants must prepare affidavits listing their property and assets;
>
> 3. The cure period, should Defendants miss one of the monthly payments, is thirty days;

---

[2] Pursuant to FRE 408(b), Plaintiffs offer evidence of their negotiations with Defendants to prove the existence of their shared settlement agreement, not to prove the liability of any party.

      4. If Defendants fail to make a payment after the cure period expires, then the Court will render a default judgment for Plaintiffs; and

      5. Upon default, Plaintiffs may seek to collect the outstanding balance of the settlement amount, and the reasonable costs to collect such an amount, including attorneys' fees. (Gilman Aff. ¶3)

Judge Grimm stated that these terms were fair and then required counsel to discuss these terms with their clients and to return with a final approval or disapproval in ten days. (Gilman Aff. ¶4)

Pursuant to Judge Grimm's instructions, counsel had a joint telephone conference with Judge Grimm ten days later on February 17, 2011. (Gilman Aff. ¶5)  On behalf of their clients, counsel consented to the aforementioned terms. (Gilman Aff. ¶5)  Both Mr. Bruce Luchansky (on behalf of Defendants) and Professor Michele Gilman (on behalf of Plaintiffs) confirmed to Judge Grimm and each other that they had spoken to their clients, explained the settlement terms, and obtained their clients' consent and authority to settle on their behalf. (Gilman Aff. ¶5)  In light of the settlement, Plaintiffs agreed to cancel the scheduled trial. (Gilman Aff. ¶5)

On February 18, 2011, the Court issued an Order memorializing the telephone conference of February 17, 2011. *Docket Entry No. 112*.  The Letter Order states:

> Based on the conversation we had during the February 17, 2011 conference call in the above referenced case, *I understand that this case has settled. I have cancelled the trial* in the previously scheduled in this case. It also is my understanding that the parties will draft a settlement agreement and jointly submit the finalized agreement to me for approval, within thirty (30) days of the date of this order.  To maintain the confidentiality of the settlement agreement, the draft should be submitted by regular mail to my Chambers.
>
> I commend you for your diligent and professional conduct, which made this settlement possible.
>
> Although informal, this is an *Order of the Court* and shall be docketed as such.

*Id.* (emphasis added).

Plaintiffs' counsel drafted the Consent Decree which incorporated the terms agreed to by the Parties and acknowledged as fair by Judge Grimm on February 17, 2011. (Gilman Aff. ¶6) Plaintiffs' counsel sent Mr. Luchansky the Consent Decree by email on March 7, 2011. (Gilman Aff. ¶6) Plaintiffs' counsel contacted Mr. Luchansky on March 17, 2011 by email to obtain a signed copy of the Consent Decree. (Gilman Aff. ¶6) Mr. Luchansky responded by telephone that Defendant Bahmani, on behalf of himself and his company Defendant XTEL, "withdraws his consent" to the settlement in its entirety. (Gilman Aff. ¶6)

Following Defendant Bahmani's refusal to sign the Consent Decree, counsel for the Parties teleconferenced with Judge Grimm on March 17, 2011. (Gilman Aff. ¶7) Mr. Luchansky told the Judge that while he had authority to consent to the settlement on February 17, 2011, his client had withdrawn that authority on March 17, 2011, just before the final Consent Decree was due to the Court. (Gilman Aff. ¶7) Mr. Luchansky then informed Plaintiffs and the Court of his intention to withdraw his appearance as Defendants' counsel. (Gilman Aff. ¶7) On March 24, 2011, Defense counsel filed a Motion to Withdraw Appearance, citing "irreconcilable differences" with his client. *Docket Entry No. 114*. Plaintiffs filed their response on March 29, 2011, entering no objection. *Docket Entry No. 115*.

### B. DEFENDANTS' USE OF SIMILAR BAD FAITH DELAYING TACTICS IN RELATED CASES

Bahmani's last minute change of heart in the instant case is consistent with the bad faith delaying tactics that he has used in related litigation in the Maryland courts. On November 17, 2006, Raphael Cunha and Richard Travessa, who were both employees of XTEL and supervised the instant case's Plaintiffs, brought suit against Defendant XTEL in the District Court for Anne Arundel County in *Cunha v. XTEL Construction Group, LLC*, case number 12092-06, and *Richard Travessa v. XTEL*

*Construction Group, LLC*, case number 12091-06.  In their complaints, Cunha and Travessa claimed that the company failed to pay them wages they had earned for three weeks of work.

Defendant XTEL appeared before the Honorable Thomas J. Pryal on October 16, 2007 without an attorney and moved for a postponement to obtain representation required for a limited liability company under Business & Occupations Article § 10-206.  Defendant Bahmani made this request five months after a pre-trial conference where Judge Pryal advised Defendant XTEL and its owner Bahmani to obtain an attorney for the company.  Accordingly, Judge Pryal denied the request for postponement, explaining that Defendant Bahmani's choice to wait until the "last moment and ask for a postponement" was inexcusable. Successful in their actions, Plaintiffs Cunha and Travessa won judgments totaling $13,383.13 and $15,483.75, respectively.  *See* 10/16/2007 Trial Transcript, attached as Exhibit 2.

This decision to deny Defendants' request for a postponement was affirmed by both the Circuit Court for Anne Arundel County, case numbers 02C07128137 and 02C08128256, and effectively affirmed by the Maryland Court of Appeals which denied Defendant XTEL's petition for certiorari.  *See* Judiciary Case Search Results for Case Nos. 02C07128137 & 02C08128256, attached as Exhibit 3.  In the instant case, it appears that Bahmani has attempted to use a similar bad faith delaying tactic to avoid a scheduled trial.

II.     ARGUMENT

      A. THE FEBRUARY 17, 2011 AGREEMENT, BETWEEN PLAINTIFFS AND DEFENDANTS AND MEMORIALIZED IN JUDGE GRIMM'S FEBRUARY 18, 2011, LETTER ORDER, CONSTITUTES AN ENFORCEABLE ORAL SETTLEMENT AGREEMENT.

The Fourth Circuit encourages settlements in an effort to meet the best interests of the parties, promote judicial economy, and preserve judicial resources.  *McDermitt, Inc. v. Centex-Simpson Constr. Co., Inc.*, 34 F.Supp.2d 397, 399 (N.D. W.V. 1999) (citing *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6
5

F.3d 177 (4th Cir. 1993)).  For purposes of enforcement and interpretation, settlement agreements are treated as simple contracts.  *Calabi v. Gov't Employees Ins. Co.*, 353 Md. 649, 652 (1999) (citing *Clark v. Elza*, 286 Md. 208, 219, 406 A.2d 922, 928 (1979)).  Once a settlement agreement is reached, a party to that agreement may move to enforce the terms of the settlement.  *Calabi.*, 353 Md. at 652.

"Trial courts possess the inherent authority to enforce a settlement agreement and to enter judgment based on an agreement without a plenary hearing." *Petty v. Timken Corp.*, 849 F.2d 130, 132 (4th Cir. 1988) (citing *Millner v. Norfolk & W. Ry. Co.*, 643 F.2d 1005, 1009 (4th Cir. 1981)).  In order to enforce a settlement agreement, the district court must (1) find that a complete agreement was reached between the parties and (2) be able to ascertain the terms of that agreement.  *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540-41 (4th Cir. 2002) (citing *Moore v. Beaufort Cnty.*, 936 F.2d 159, 163 (4th Cir. 1991); *Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983)).  The settlement agreement in the instant case meets both of these requirements.  Furthermore, a party cannot renege on an otherwise binding settlement agreement merely because the party no longer finds the terms acceptable.  *See Young v. FDIC*, 103 F.3d 1180, 1195 (4th Cir. 1997); *see also Hensley*, 277 F.3d at 540.

> **1. The Parties reached a complete oral settlement agreement during the February 17, 2011 conference with Judge Grimm as the Parties intended to be bound by the terms of the settlement agreement.**

In order to enter into a valid settlement agreement, all parties must intend to be bound by its terms and conditions.  *See Moore*, 936 F.2d at 162.  Where an attorney accepts a settlement offer pursuant to authority granted by his or her client, the presiding trial court does not possess the authority to "den[y] … specific performance of [the] authorized settlement agreement" because the client later finds the terms unacceptable.  *Napier v. Chesapeake & Ohio Ry. Co.*, 582 F.2d 1344, 1346 (4th Cir. 1978); *see also Petty*, 849 F.2d at 133 (holding that a client's challenge to a valid settlement agreement

voluntarily accepted by the client "through the duly authorized actions of his attorney" is a "dispute…purely between the party and his attorney.").

In *Petty v. Timken Corp*, 849 F.2d 130 (4th Cir. 1988), the Court of Appeals for the Fourth Circuit affirmed the district court's order enforcing an oral settlement agreement between the plaintiff employee and the defendant employer. During the pre-trial conference, the defendant offered to settle the case for $5,000. *Id.* at 131. The plaintiff accepted the offer, but three days later "back[ed] out of the agreement." *Id.* at 131-32.

Without a plenary hearing, the court held that "[c]learly, a settlement did exist." *Id.* at 133. In doing so, the court made several factual findings to support its decision to enforce the settlement agreement. *Id.* at 132-33. The court found that the defendant made an effective offer to the plaintiff during the pre-trial conference with the court, and that plaintiff's counsel had communicated this offer to his client in their meeting after the pre-trial conference. *Id.* The plaintiff agreed to the terms of the agreement during this meeting, and then confirmed in court that he had previously accepted the settlement agreement. *Id.* As a result, the trial court "dismissed the case without prejudice based on settlement and granted the parties 60 days to consummate the agreement." *Id.* at 132. Three days after agreeing to the oral settlement, Plaintiff had a change of heart and reneged on the agreement. *Id.* When the defendant later moved to compel the settlement, the district court upheld the settlement. *Id.* 132. The Fourth Circuit affirmed. *Id.* at 133.

As in *Petty*, counsel for both sides in this case advised the Court that a settlement had been reached, and afterwards, Bahmani had a change of heart. *See Petty*, 849 F.2d at 131-32. On February 17, 2011, Plaintiffs' counsel and defense counsel each told the Court that they had communicated the settlement terms discussed on February 7, 2011, to their respective clients and that their clients had

approved the terms.  Based on Mr. Luchansky's representations to this Court, there is no doubt that he had authority to settle this case on behalf of his clients.  *See generally Napier*, 582 F.2d 1344 (4th Cir. 1978) (a party's grant of authority to settle a case and his attorney's acceptance of the settlement offer on his behalf was effective to bind the party to the settlement).  Thus, Mr. Luchanky's affirmative representation on February 17, 2011, that his client was willing to forego trial and agree to the terms of the settlement agreement shows that Defendants Bahmani and XTEL intended to be bound by the terms of the settlement agreement communicated to Bahmani by his counsel.  *See Moore*, 936 F.2d at 162 (holding that an oral settlement existed when plaintiff accepted defendant's verbal settlement offer by letter even though defendant ultimately refused to sign the final settlement documents).

Furthermore, Judge Grimm subsequently confirmed that a settlement agreement was reached in his February 18, 2011 Order of Court.  *Docket Entry No. 112*.  The Order stated:

> Based on the conversation we had during the February 17, 2011, conference call in the above-referenced case, I understand that this case has settled.  I have cancelled the trial previously scheduled in this case.  It also is my understanding that the parties will draft a settlement agreement and jointly submit the finalized agreement to me for approval, within thirty (30) days of the date of this order.  To maintain the confidentiality of the settlement agreement, the draft should be submitted by regular mail to my Chambers.
>
> I commend you for your diligent and professional conduct, which made this settlement possible.
>
> Although informal, this is an *Order of the Court* and shall be docketed as such.

*See Docket entry 112*.

The facts surrounding this settlement are even stronger than those in *Petty*.  Specifically, the Defendants continued their acceptance of the agreement well beyond February 17, 2011, the date the Parties entered into the oral agreement, instead of immediately expressing their rejection after the conference, as in *Petty*.  *See Petty*, 849 F.2d at 132.  At no time prior to March 17, 2011, when the

written version of the agreement was due to Judge Grimm, did defense counsel indicate that his client had changed his mind. Thus, on February 17, 2011, the Parties reached a complete and enforceable oral settlement agreement. Bahmani cannot now renege on this settlement agreement. *See Young*, 103 F.3d at 1195.

### 2. The terms of the oral settlement agreement reached by the parties on February 17, 2011, are ascertainable by this Court.

In order to enforce an oral settlement agreement, the court "must be able to determine its terms and conditions." *Hensley*, 277 F.3d at 540-41 (citing *Moore*, 936 F.2d at 162; *Ozyagcilar*, 701 F.2d at 308)); *see also McDermitt*, 34 F.Supp.2d at 400 (stating that whether the parties later agree or fail to agree on potential ancillary terms of the agreement does not affect the validity of the agreement once the parties "knowingly and voluntarily" agree to the material terms of the settlement).

In *McDermitt v. Centex-Simpson Construction Co.*, 34 F.Supp.2d 397, 398-400 (N.D. W.V. 1999), the United States District Court for the Northern District of West Virginia granted defendant's motion to enforce a settlement agreement entered into during the parties' first telephonic settlement conference. During that settlement conference, the parties stated that they agreed that defendants would pay a sum of $217,500 in exchange for plaintiff releasing all claims against the defendant. *Id.* at 398.

After the initial conference, the parties developed a dispute as to whether the plaintiff was free to file additional actions against the defendant after the execution of the agreement. *Id*. Ultimately unable to agree to terms on this ancillary issue, defendant asked the trial court to enforce the agreement between the parties from the initial telephonic conference. *Id*. The trial court found that an agreement was reached during the initial conference, as the parties had agreed to the settlement sum and general release. *Id*. at 401. Able to ascertain terms sufficient to constitute an agreement, the trial court enforced the oral settlement agreement. *Id*.

In the instant case, during the February 7, 2011, settlement conference with Judge Grimm, the following terms were summarized by Judge Grimm as being the terms of the settlement agreement: (1) $10,000 to settle the case, $8.500 of which was payable in monthly installments of $500 and $1,500 which constituted the first payment for administrative costs; (2) upon agreeing to the settlement, Defendants must prepare affidavits listing their property; (3) the cure period, should Defendants miss one of the monthly payments, is 30 days; (4) if Defendants fail to make a payment, then the Court will render a default judgment for the Plaintiffs; and (5) upon default, Plaintiffs may seek to collect the outstanding balance of the settlement amount, and reasonable costs to collect, including attorney's fees. Subsequently, Judge Grimm stated that these terms were fair during the February 17, 2011, settlement conference in which Plaintiffs' counsel and Defendants' counsel accepted the terms of the offer on behalf of their respective clients. Accordingly, the terms of the oral settlement agreement are ascertainable by the court and should be enforced.

### 3. Defendants cannot renege on the February 17, 2011 settlement agreement merely because Bahmani no longer likes the terms of the agreement.

Upon reaching a binding oral settlement agreement, neither party to the agreement may avoid the agreement based upon reconsideration of the settlement terms. *See Young*, 103 F.3d at 1195. As stated by the Court of Appeals for the Fourth Circuit, "having second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement." *See Id.* at 1195; *see also Hensley*, 277 F.3d at 540. Further, that the parties later intended to execute a document memorializing the agreement does not limit the parties from orally binding themselves to the agreement before execution. *Conway v. Brooklyn Union Gas Co.*, 236 F.Supp.2d 241, 250 (E.D.N.Y. 2002) ("The mere intention to commit an agreement to writing will not prevent contract formation prior to execution.") (quoting *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2nd Cir. 1985)).

In *Petty*, the plaintiff accepted defendant's offer to settle the employment dispute through his attorney, and also reaffirmed his acceptance in open court. *Petty*, 840 F.2d at 131-32. Three days after accepting the settlement offer, plaintiff notified his counsel that he wanted to "back out of the agreement." *Id.* at 132. Upon receiving notice that the plaintiff reneged on the oral settlement agreement, the defendants moved for the court to enforce the settlement. *Id.* Enforcing the settlement agreement, the court stated, "[a] litigant who enters the judicial process through the agency of freely chosen counsel always assumes a certain risk that the result achieved will not be satisfactory. Defeated expectations do not, therefore, entitle the litigant to repudiate commitments made to opposing parties or to the court." *Id.* at 133.

In the instant case, that the Parties did not execute the final written document does not negate the settlement. *See McDermitt*, 34 F.Supp.2d at 400; *see also Petty*, 849 F.2d at 133. Rather, the evidence shows that, as in *Petty*, on February 17, 2011, Defendants, through counsel, unequivocally agreed to the terms of the settlement. Then Defendant Bahmani simply changed his mind—or purposefully intended to delay this action, as he has previously done in other related cases, by expressing last minute "buyer's remorse," after the long-scheduled trial date was pulled from the Court's calendar in light of the settlement.

### B. THIS COURT MAY SUMMARILY ENFORCE THE SETTLEMENT AGREEMENT WITHOUT A HEARING AS NO "SUBSTANTIAL FACTUAL DISPUTE" EXISTS BETWEEN THE PARTIES.

Generally, a trial court possesses the authority to "summarily…enforce a settlement agreement and to enter judgment based on that agreement without a plenary hearing." *Milner*, 643 F.2d at 1009 (4th Cir. 1981) (citing *Kukla v. Nat'l Distillers Prod. Co.*, 483 F.2d 619 (6th Cir. 1973); *Cia Anon Venezolana de Navegacion v. Harris*, 374 F.2d 33 (5th Cir. 1967)). Only where there is a "substantial

factual dispute respecting the validity of a settlement agreement," must the court hold an evidentiary hearing. *Milner*, 643 F.2d at 1009 (citing *Wood*, 528 F.3d at 425). Where no dispute exists, the trial court has the authority to enforce the settlement agreement summarily. *See generally Hensley*, 277 F.3d at 541.

In the instant case, a plenary hearing is not required as no "substantial factual dispute" exists. *See Milner*, 643 F.2d at 1009 (citing *Wood*, 528 F.3d at 425). There is no evidence whatsoever that a dispute exists as to whether the Parties intended to be bound by the settlement agreement, whether the Parties agreed to the terms of the settlement agreement, or whether opposing counsel acted with authority to settle. *See Moore*, 936 F.2d at 162; *Ozyagcilar*, 701 F.2d at 308 (citing *Wood*, 528 F.3d at 425); *see also Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 203 F.3d 291, 298 (4th Cir. 2000). Rather, the evidence, derived from both the private negotiations between Parties' counsel and those before the Court, demonstrates that Defendants entered into a binding settlement agreement, and thereafter, Defendant Bahmani simply changed his mind. *See Young*, 103 F.3d at 1195 (citing *Petty*, 849 F.2d at 133). As no substantial factual dispute exists, this Court can, and should, summarily enforce the February 17, 2011, oral settlement agreement. *Milner*, 643 F.2d at 1009 (citing *Wood*, 528 F.3f at 425).

### C. JUDGE GRIMM MAY PRESIDE OVER AN EVIDENTIARY HEARING ON THIS ISSUE, IF NECESSARY, BECAUSE HE IS NOT A MATERIAL WITNESS AND HIS IMPARTIALITY CANNOT "REASONABLY BE QUESTIONED" BASED UPON HIS ROLE IN THE SETTLEMENT NEGOTIATIONS IN THIS CASE.

The Honorable Chief Magistrate Judge Grimm, not being a material witness and holding no personal bias in this case, has authority to preside over an evidentiary hearing, should this Court determine one necessary. A judge's presence and participation in settlement does not make him "likely

to be a material witness in the proceeding," 28 U.S.C § 455(b)(5)(iv), "where there are other available witnesses who can give the same testimony."  46 Am. Jur. 2d Judges § 101; *see also McGuire v. Warner*, No. 05-40185, 2009 WL 3756865 (E.D. Mich. Nov. 9, 2009).  On February 17, 2011, when Plaintiffs and Defendants agreed to the settlement through their respective counsel, six attorneys representing the Parties were present and can testify: counsel for Defendants Bruce Luchansky, Esq., and counsel for Plaintiffs Michele Gilman, Esq., and student attorneys Robert Yeager, Joshua Beale, Brittany King, and Diane Norcross.  Thus, Judge Grimm is not disqualified from presiding over an evidentiary hearing related to this Motion. *See U.S. v. Smith*, 337 F.2d 49, 54 (4th Cir. 1969) (a district judge's recollections that corroborate the testimony of several other witnesses did not make him a material witness under § 455).

    Pursuant to 28 U.S.C. § 455, a judge must withdraw from presiding over a case where "his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).  Judge Grimm has no personal bias or knowledge that warrants his recusal.  *See* 28 U.S.C. § 455(a)(1).   There have been no *ex parte* discussions with counsel or any party in this case.  Further, Judge Grimm acknowledged that the case settled in the February 18, 2011, Order. *See Docket Entry No. 112*.  Moreover, judicial rulings, without more, "almost never constitute valid bases for a bias or partiality motion," *Liteky v. U.S.*, 510 U.S. 540, 555 (1994); *People Helpers Found., Inc. v. City of Richmond*, 312 F.3d 1321 (4th Cir. 1993) (citing *U.S. v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *Shaw v. Martin*, 733 F.2d 304, 308 (4th Cir.1984)). Defendants may not now challenge the Judge Grimm's participation "simply because they dislike the court's approach or because they disagree with the ultimate outcome of their case." *U.S. v. Gordon*, 61 F.3d 263, 268 (4th Cir. 1995).  Accordingly, Judge Grimm can preside over an evidentiary hearing in this case, should one be deemed necessary.

### III.     CONCLUSION

Based on the foregoing reasons, Plaintiffs respectfully requests that this Court grant Plaintiffs' Motion to Enforce the Oral Settlement Agreement reached by the Parties.

Respectfully Submitted,

_____/s/_____
Michele Estrin Gilman, Esq.
Federal Bar No. 22443
University of Baltimore School of Law
Civil Advocacy Clinic
40 W. Chase Street
Baltimore, MD 21201
Email: mgilman@ubalt.edu
Phone: 410-837-5709
Fax: 410-837-4776
*Attorney for Plaintiffs*