THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

VALERIO LOPEZ, *et al.*,                          :

  Plaintiffs,                          :          CIVIL NO.: PWG-08-1579

v.                                               :

XTEL CONSTRUCTION GROUP,                          :
LLC, and MIKE BAHMANI,
               :
  Defendants.
         …o0o…

## MEMORANDUM OPINION

  This Memorandum Opinion addresses the Motion for Attorneys' Fees and Costs that Plaintiffs Valerio Lopez, *et al.* filed, ECF No. 126.  Defendants XTEL Construction Group, LLC and Mike Bahmani have not filed a response, and the time for doing so has passed.  *See* Loc. R. 105.2.a.  Having reviewed the filings, I find that a hearing is not necessary.  *See* Loc. R. 105.6. For the reasons stated herein, Plaintiffs' Motion for Attorneys' Fees and Costs is GRANTED, for the amounts stated herein.  This Memorandum Opinion disposes of ECF No. 126.

## I.  BACKGROUND

  In this case concerning Defendants' alleged failure to pay Plaintiffs sufficient wages under state and federal law, the parties reached a settlement agreement in February 2011.  Dec. 16, 2011 Mem. & Order 1–2, ECF No. 124.    Plaintiffs moved to enforce the Settlement Agreement on April 18, 2011, ECF No. 116, and this Court granted their motion.  June 15, 2011 Mem. & Order 1, ECF No. 120.  After Defendants failed to make payments pursuant to the Settlement Agreement or to respond to Plaintiffs' cure letter, Plaintiffs moved for default judgment.  ECF No. 123.  On December 16, 2011, the Court granted Plaintiffs' Motion for Entry

of Default Judgment; noted that Plaintiffs could recover attorney's fees and costs pursuant to the Settlement Agreement between the parties; and directed Plaintiffs' counsel to provide "a complete explanation and calculation of the reasonable attorney's fees and associated costs that Plaintiffs are seeking" by December 30, 2011.  Dec. 16, 2011 Mem. & Order 8, 9, ECF No. 124. On February 3, 2012, the Court extended Plaintiffs' deadline to February 17, 2012.  ECF No. 125.  Plaintiffs filed the pending motion on February 16, 2012.

## II.    LEGAL FRAMEWORK FOR ATTORNEY'S FEES AWARD

In calculating an award of attorney's fees, the Court must determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008); *see Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award") (internal citations omitted).  An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984); *see Thompson v. HUD*, No. MJG-95-309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (same).  The party seeking fees "must show that the number of hours for which he seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary."  *Travis v. Prime Lending*, No. 3:07cv00065, 2008 WL 2397330, at *4 (W.D. Va. June 12, 2008) (concluding, after an initial determination that the attorney's hourly rate was reasonable for the particular district, that attorney's fees requested by Plaintiff, based on documentation of hours worked and tasks completed, were reasonable); *Flynn v. Jocanz*, 480 F. Supp. 2d 218, 220–21 (D.D.C. 2007) (awarding requested attorney's fees based on affidavits and

the record).  To meet its burden, the party must "provid[e] this Court with sufficiently detailed time sheets to justify the hours for which an award is sought."  *Thompson*, 2002 WL 31777631, at \*9.  The time sheets should provide "an itemized listing of hours and expenses and a short description for each entry explaining how the time was spent."  *Id.*

A trial court may exercise its discretion in determining the lodestar amount because it possesses "'superior understanding of the litigation,'" and the matter is "'essentially'" factual. *Thompson*, 2002 WL 31777631, at \*6 n.18 (quoting *Daly v. Hill*, 790 F.2d 1071, 1078–79 (4th Cir. 1986)). To do so, this Court evaluates "the twelve well-known factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978)."  *Thompson*, 2002 WL 31777631, at \*6 (footnotes omitted). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at \*6 n.19 (citing *Johnson*, 488 F.2d at 717–19).

Also of import, Appendix B to this Court's Local Rules, Rules and Guidelines for Determining Attorneys' Fees in Certain Cases, provides that $275–400 is a reasonable hourly fee for "[l]awyers admitted to the bar for fifteen (15) years or more," and $95–115 is a reasonable hourly fee for "[p]aralegals and law clerks."  Loc. R. App'x B, at 3.d, e (footnote omitted). However, these Guidelines are not absolute; they are "solely to provide practical guidance to lawyers and judges when requesting, challenging and awarding fees." Loc. R. App'x B n.6.  The Court also may consider "affidavits of lawyers in the [relevant] legal community attesting to the

customary rates charged for [similar matters]." *Poole ex rel. Elliott v. Textron, Inc*., 192 F.R.D. 494, 509–10 (D. Md. 2000).

### III.    REASONABLE ATTORNEY'S FEES

Plaintiffs seek a total of $19,779.00 in attorney's fees, which includes $18,009.00 for 156.6 hours of services that seven student attorneys[1] provided, and $1,770.00 for 5.9 hours of services that Professor Michele Gilman provided.  Pls.' Mem. Ex. A, ECF No. 126-2.  Attached to their Memorandum of Law in Support of Motion for Attorneys' Fees and Costs, ECF No. 126-1, Plaintiffs submitted seven pages of time records for their attorneys' work on the case, Pls.' Mem. Ex. A, and the Affidavit of Professor Michele Gilman, Pls.' Mem. Ex. B, ECF No. 126-3. These documents provide the details necessary to justify an attorney's fee award, *see Thompson*, 2002 WL 31777631, at *9, but the amount of the award must be modified as explained below.

Three pertinent *Johnson* factors are "[t]he customary fee"; "[t]he experience, reputation, and ability of the attorneys"; and "[a]wards in similar cases."  *Johnson*, 488 F.2d at 718–19; *see Thompson*, 2002 WL 31777631, at *6 n.19.  As noted, seven of Plaintiffs' counsel are student attorneys; one of them, the supervising law professor, is an attorney; but none of them charged Plaintiffs for their services.[2]  Pls.' Mem. 5.   Rather, "the student attorneys and supervising

---

[1] This Court uses the term "student attorney" to refer to "[a]ny eligible law student in a law school accredited by the American Bar Association" who meets the conditions stated in Local Rule 702.2 and "represent[s] a party and appear[s] before any Bankruptcy Judge, Magistrate Judge, or District Court Judge in this District."  Loc. R. 702.1; *see* Rules Governing Admission to the Bar of Md., R. 16(b) (stating that a law student who is "eligible to engage in the practice of law as provided in [Rule 16(b) of the Rules Governing Admission to the Bar of Maryland]" must be "enrolled in a clinical program" and "certified in accordance with section (c) of [Rule 16(b)]").  A law student who works or interns at a firm but does not represent a party pursuant to the terms of Local Rule 702 or Rule 16(b) of the Rules Governing Admission to the Bar of Maryland is not a "student attorney."

[2] Therefore, the fee was neither fixed nor contingent.  *See Johnson*, 488 F.2d at 718; *Thompson*, 2002 WL 31777631, at *6 n.19.

attorney who worked in this case are a part of the University of Baltimore Law School's Civil Advocacy Clinic, which provides pro bono legal representation to low-income clients." *Id.* Nonetheless, "courts have consistently held that entities providing pro bono representation may receive attorney's fees where appropriate, even though they did not expect payment from the client and, in some cases, received public funding." *Brinn v. Tidewater Transp. Dist. Comm'n*, 242 F.3d 227, 234–35 (4th Cir. 2001) (citing *Blum*, 465 U.S. at 893–95; *Johnson v. Lafayette Fire Fighters Ass'n Local 472*, 51 F.3d 726, 732 (7th Cir. 1995); *Alexander S. v. Boyd*, 929 F. Supp. 925, 928–29 (D.S.C. 1995), *aff'd sub nom. Burnside v. Boyd*, 89 F.3d 827 (4th Cir. 1996), cases in which fees were awarded to Legal Aid Society, a private foundation, and a state agency). With regard to the student attorneys, the clinical program could receive attorney's fees, although the students themselves are precluded from receiving compensation. *See* Rules Governing Admission to the Bar of Md., R. 16(d) ("The law student shall neither ask for nor receive personal compensation of any kind for service rendered under this Rule."); Loc. R. 702.2.e ("The student may not accept personal compensation from a client or other source, although the supervisor or the law school clinical program may accept compensation.").

The Fourth Circuit has directed this Court to enter attorney's fees in at least one case in which a student attorney represented the prevailing party. *See Smith v. Heckler*, 739 F.2d 144, 144, 148 (4th Cir. 1984). There, Smith's counsel was a third year law student in the University of Maryland School of Law's Clinical Law Program. *Id.* at 144. The Fourth Circuit ruled in Smith's favor, reversing and remanding the district court decision, "with directions to enter an order awarding Smith a reasonable amount of attorney's fees incurred as a result of this litigation." *Id.* at 148. Yet, the Fourth Circuit did not indicate whether the fees would compensate for the student attorney's time, the supervising attorney's time, or both. *See id.*

Similarly, in *American Canoe Association v. United States Environmental Protection Agency*, 138 F. Supp. 2d 722, 733–44 (E.D. Va. 2001), in determining the reasonableness of a request for attorney's fees, the Eastern District of Virginia noted that plaintiffs' counsel included "paralegals and student attorneys," but did not identify which, if any, of the named attorneys were student attorneys when it awarded fees for their services.  Nor did the court state whether the student attorneys received credit from their law schools or monetary compensation from the American Canoe Association, for whom plaintiffs' counsel worked.  *See id.*  Beyond these cases, this Court's research has not uncovered any Fourth Circuit or District of Maryland cases awarding attorney's fees for student attorneys completing a clinic as part of their legal education.

*Elashi v. Sabol*, No. 4:09-CV-2201, 2010 WL 4536774 (M.D. Pa. Nov. 2, 2010), although not binding on this Court, nonetheless is instructive.  There, the court, *sua sponte*, addressed the propriety of fee requests in a case brought under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), for work performed by two student attorneys who "were working on th[e] case as part of the Civil Litigation Program at Boston University School of Law. . . . presumably earning credit for their work."  *Id.* at *5.  The court differentiated the case from other cases in which fees were awarded for work performed by law students working "as paid employees at a law firm."  *Id.*  The court concluded that, in the Third Circuit, "a legal service organization can obtain a fee award for the work of uncompensated law-students, regardless of their receipt of academic credit for their services."  *Id.*  (citing *Barry v. Astrue*, 121 Soc. Sec. Rep. Serv. 60, 2007 WL 2022085, at *22 (E.D. Pa. 2007) ("Because the services rendered by these [uncompensated,] certified law students are essentially the equivalent to those provided by licensed attorneys, they should be compensated under the EAJA as fees rather than expenses."); *DiGennaro v. Bown*, 666 F. Supp. 426, 431 (E.D. Pa. 1987) ("We see no reason to deny a fee

award to a legal services organization for the supervised hours reasonably expended by uncompensated law-students working in a clinical facility, despite their receipt of academic credit instead of payment for their services.")).  Thus, noting that there was no objection to the fees sought, the court "allow[ed] reimbursement for the work of these two student attorneys at the requested rate" of $100 per hour.  *Id.*  However, the plaintiff also sought attorney's fees for the students' supervising attorney without alleging that the attorney did anything other than "check the work of the students," and the court reduced the fee award, reasoning that a full fee award would duplicate the fees awarded for the students' work.  *Id.*; *see John S. v. Cuomo*, No. 90-CV-294, 1999 WL 592693, at *5 (N.D.N.Y. July 29, 1999) (reducing the attorney's fees award for supervising attorneys because "[m]any of the hours billed by [the supervising] attorneys were to supervise students, review student work, and facilitate group meetings with students" and although, "[i]n a law school environment, this is completely acceptable, . . . defendants should not bear the burden, and expense, of educating law students").

Also noteworthy is *John S.*, 1999 WL 592693, at *1–2, in which plaintiffs' counsel included student attorneys at the Syracuse University College of Law Public Interest Law Firm II ("PILF"), where they worked under the guidance of supervising attorneys.  When the plaintiffs sought attorney's fees, the court noted that "[c]ourts in [the Northern District of New York] have been awarding student attorneys, law students and paralegals $50 per hour for quite some time." *John S.*, 1999 WL 592693, at *2 (citing *Ellis v. Apfel*, No. 97-CV-1682, 1998 WL 480861, at *2–3 (N.D.N.Y. Aug. 14, 1998) (awarding $50 per hour for work performed by student attorney); *Hannigan v. Bd. of Educ.*, No. 95-CV-1435, 1997 WL 10971, at *3 (N.D.N.Y. Jan. 9, 1997) (finding that "a reasonably hourly rate for the work of law students in the Northern District

is $50 an hour")); *see also Albro v. Cnty. of Onondaga*, No. 85-CV-1425, 1998 WL 52013 (N.D.N.Y. Feb. 4, 1998) (awarding legal fees for student attorneys).

Although the court in *John S.*, 1999 WL 592693, awarded attorney's fees for the student attorneys' work, it reduced the number of hours for which it would award fees by more than 40%, reasoning that a number of the hours of work that the students billed were "vague, excessive, redundant or otherwise unnecessary," and "'[w]orking on this action constituted part of these students' law school education,'" which the defendants should not have to finance. *Id.* at *5 (quoting *Jones v. Kreisel Co.*, No. 90 Civ. 7412, 1995 WL 681095, at *4 (S.D.N.Y. Nov. 16, 1995)); *see also Quinto v. Legal Times of Wash., Inc.*, 511 F. Supp. 579, 582 (D.D.C. 1981) (The amount of hours worked must be reduced when the law student was "'dealing with an unfamiliar subject,'" because a law student "'cannot fairly charge defendants[] for (his) education.'") (quoting *Orgel v. Clark Boardman Co.*, 128 U.S.P.Q. 531, 532 (S.D.N.Y. 1960), *modified*, 301 F.2d 119 (2d Cir. 1962)). Likewise, in *Jones v. Kreisel Co.*, No. 90 Civ. 7412, 1995 WL 681095, at *4 (S.D.N.Y. Nov. 16, 1995), the court concluded that "[i]t would be inequitable . . . to ask defendant to subsidize . . . the students' education" by ordering defendant to pay for all hours that the student attorneys dedicated to the case. The court observed that "simple tasks might take law students longer, due only to their inexperience with such matters," and that students "may spend a great deal of time reviewing cases or documents out of their own interest or to further their education, even though it may not be necessary to the representation of their client." *Id.* The court "determined that at least 75% of the hours spent were excessive, redundant or unnecessary," and reduced the fee award accordingly. *Id.*

In *Jordan v. United States Department of Justice*, 691 F.2d 514, 524–25 (D.C. Cir. 1982), the D.C. Circuit reversed a denial of attorney's fees for the work of, *inter alia*, student attorneys,

because the D.C. Circuit could "discern no reason why FOIA's statutory authorization of attorneys' fee awards should not encompass student work in law school clinics."  The court stated that it could not "condone a concept of attorneys' fees so narrow as to exclude the work of law students simply because they are not yet members of the bar." *Id.* at 523. Courts in other jurisdictions have awarded attorney's fees for work performed by law students, without identifying whether the students received school credit or monetary compensation for their work. *See New Leadership Comm'n v. Davidson*, 23 F. Supp. 2d 301, 305 (E.D.N.Y. 1998) (affirming magistrate judge's inclusion of fees for student attorneys in fee award because "it is so well established that, so long as the rates charged and hours spent are reasonable, fees for students are recoverable."); *Luciano v. Olsten Corp.*, 925 F. Supp. 956, 963 (E.D.N.Y. 1996) (awarding fees for firm's "law student clerk"); *Burr v. Sobol*, 748 F. Supp. 97, 100 (S.D.N.Y. 1990) (stating that "[t]ime spent by law students working on a case is properly reimbursable provided it is the prevailing practice in the community to bill separately for this time"); *Dorfman v. First Boston Corp.*, 70 F.R.D. 366, 374 (E.D. Pa. 1976) (finding $15 per hour to be a reasonable fee for student attorneys).

Here, Plaintiffs request $115 per hour for the student attorneys' work, noting that the figure is "the maximum fee recommended by the Local Rules for law clerks," and student attorneys "have more responsibility and experience than the typical law clerk." Pls.' Mem. 6. As noted, the range provided in the Local Rules for paralegals and law clerks is $95–115 per hour. Loc. R. App'x B, at 3.e.  It is true that student attorneys have significant responsibility pursuant to Rule 16 of the Rules Governing Admission to the Bar for the State of Maryland, which provides that, "[i]n connection with a clinical program, a law student for whom a certificate is in effect may appear in any trial court or the Court of Special Appeals or otherwise engage in the

practice of law in Maryland," under the supervision of "an attorney who is a member in good standing of the Bar of this State and whose service as a supervising attorney for the clinical program is approved by the dean of the law school."  Rules Governing Admission to the Bar, R. 16(a)(3), (d).  *See also* Loc. R. 702.  However, plaintiffs have not indicated that their seven student attorneys had sufficient experience to merit attorney's fees at the upper end of the range. Thus, the Court exercises its discretion to determine that $105 per hour is an appropriate rate for fees for the student attorneys.

According to plaintiffs, the student attorneys reasonably spent 156.6 hours enforcing the Settlement Agreement and filing for default judgment and attorney's fees in this case.  With regard to the number of hours, the relevant *Johnson* factors include "[t]he time and labor required"; "[t]he novelty and difficulty of the questions"; "[t]he skill requisite to properly perform the legal service properly"; and "[t]he preclusion of other employment by the attorney due to acceptance of the case."  *Johnson*, 488 F.2d at 717–18; *see Thompson*, 2002 WL 31777631, at *6 n.19.  Neither a motion to enforce a settlement agreement nor a motion for default judgment is novel or difficult or requires sophisticated lawyering skills.  The student attorneys were not losing business by representing Plaintiffs, because they were not working for profit, but their work on this case did prevent them from representing other clients. *See Johnson*, 488 F.2d at 717–18; *Thompson*, 2002 WL 31777631, at *6 n.19.

The Court does not doubt that the student attorneys dedicated 156.6 hours to these pursuits, but it cannot conclude that enforcing the Settlement Agreement and filing for default judgment under the facts of this case reasonably necessitated 156.6 hours of work.  For example, the March 17, 2011 conference call, which the Court docketed as a thirty-minute call, appears three times in the students' log as a one-hour call, once for each of two students and once for the

supervising attorney.  Also, the students spent more than seventy hours preparing their Motion to Enforce Settlement Agreement, a two-page motion with a fourteen-page supporting memorandum and three exhibits.  Certainly, the majority of these hours can be considered "education."  *See John S.*, 1999 WL 592693, at *5; *Jones*, 1995 WL 681095, at *4; *Quinto*, 511 F. Supp. at 582.  As for "[t]he nature and length of the professional relationship with the client," *Johnson*, 488 F.2d at 719, it is noteworthy that the student attorneys spent more than twenty hours transferring the case among student attorneys at the close of each semester.  The bulk of these hours can be attributed to the students' "education," as the close of each semester entailed a changing of the guard, and each semester the new counsel would have to learn aspects of the case that an experienced attorney could grasp more readily.  *See John S.*, 1999 WL 592693, at *5; *Jones*, 1995 WL 681095, at *4; *Quinto*, 511 F. Supp. at 582.

Three *Johnson* factors remain: "[t]ime limitations imposed by the client or the circumstances"; "[t]he amount involved and the results obtained"; and "[t]he 'undesirability' of the case."  *Johnson*, 488 F.2d at 718–19.  There were no time limitations in this case, as shown by the amount of time Plaintiffs' student attorneys dedicated to the case.  As for the results, counsel obtained a settlement agreement, an order enforcing that agreement, and a default judgment against Defendants.  This is no small feat.  However, the amount of the judgment is only $10,000.  *See* Dec. 16, 2011 Mem. & Order 9.  Plaintiffs argue that the case was one of "exceptional complexity" that imposed "financial burdens and [a] lengthy and complicated settlement process."  Pls.' Mem. 8.  They insist that Plaintiffs "are non-English speaking immigrants who had to be counseled extensively on their rights, legal process, and procedures of settlement."  *Id.*  Yet, much of the time the student attorneys spent on the case was allocated to researching, drafting, and revising motions.  See Pls.' Mem. Ex. A. 1–6.  Given these facts, it

would be reasonable for student attorneys to spend a total of sixty-five hours, but no more than that, preparing these motions.

With regard to the attorney's fees requested for the supervising attorney's time, it is noteworthy that Professor Gilman has "been practicing law for almost nineteen years," during which time she has worked as a law clerk for a federal judge, an associate in private practice, a trial attorney for the federal government, and a teacher and director in the University of Baltimore School of Law's clinical program.  Gilman Aff. ¶¶ 1, 3–5.  For an attorney of her experience, the requested $300 per hour is a reasonable rate.  *See* Loc. R. App'x B, at 3.d. Indeed, it is a bargain, given that it is significantly below the highest hourly amount recognized by the Local Rules of this Court, and Professor Gilman's exceptional qualifications and the skill and professionalism with which she exercised them surely would have warranted the highest authorized hourly amount had she requested it.  Of the 5.9 hours she worked on this case, 5 were supervisory.  *See* Pls.' Mem. Ex. A at 1, 2 (participated in a conference call along with student attorneys, whose time also was recorded; reviewed motions and "provided comments").  These hours already will be compensated as hours that the student attorneys worked on the case.  *See* *Elashi*, 2010 WL 4536774, at *5.  Therefore, it would be reasonable to compensate for 0.9 hours of Professor Gilman's time at $300 per hour.

Thus, reasonable attorney's fees would include 65 student attorney hours at $105 per hour, or $6,825.00, and 0.9 supervisory attorney hours at $300 per hour, or $270.00, for a total of $7,095.00.

## IV.    COSTS

Plaintiff also seeks costs in the amount of $98.20, which includes mileage to record the judgment in Anne Arundel County Circuit Court (124 miles at $0.55 per mile, or $68.20), and

$30.00 of court filing fees.  Pls.' Mem. Ex. A at 7.  These costs are reasonable.  *See* Loc. R.

App'x B, at 4.a ("[R]easonable out-of-pocket expenses . . . are compensable at actual cost."), 4.b

("Mileage is compensable at the rate of reimbursement for official government travel in effect at

the time the expense was incurred."); *Int'l Painters & Allied Trades Indus. Pension Fund v. H.C.*

*Ackerman & Son, Inc.*, No. JKB-11-2117, 2012 WL 251963, at *4 (D. Md. Jan. 24, 2012)

(finding "filing fees . . . and special delivery" to be reasonable costs).  Coupled with the total

attorney's fee award of $7,095.00, the total fee and costs payment shall be $7,193.20.

**V.      CONTINUING FEES AND COSTS**

Plaintiffs also "request that this Court keep this case open so that Plaintiffs' counsel can

seek additional attorneys' fees in the future, given that plaintiffs' counsel is currently in the

process of judgment enforcement."  Pls.' Mot. 2.  Additionally, they request that "any award of

attorneys' fees and costs be issued in a supplemental judgment so that enforcement proceedings

can continue based upon any newly awarded amount."  Pls.' Mem. 9.  The Court notes that this

case was closed on June 29, 2011, when the Court signed an order dismissing the case, based on

the parties' settlement agreement.  ECF No. 122.  Nonetheless, at the conclusion of Plaintiffs'

efforts to collect on the judgment, Plaintiffs may file a second motion for reasonable attorney's

fees and costs incurred from the date of this Memorandum Opinion and attached Order and

Supplemental Judgment.

**VI.     CONCLUSION**

In sum, it is hereby ORDERED that relief in the form of payment by Defendants of

$7,193.20 for attorney's fees and costs is GRANTED.  Defendants shall remit payment in full to

Plaintiffs within thirty (30) days of this Order.   An Order and Supplemental Judgment is attached.

Dated: <u>March 9, 2012 </u>                                    <u>            /S/                    </u>
                                                                        Paul W. Grimm
                                                                        United States Magistrate Judge


lyb